# Bloomsburg Mills, Inc., v. Local Union No. 667, CIO, etc.

Before Valentine, P. J., Aponick, Flannery, Lewis and Pinola, JJ.

*R. Lawrence Coughlin* and *R. F. Lowery,* for complainant.

*James L. Brown,* for defendants.

LEWIS, J., January 10, 1950.—This matter is before the court on a motion to dissolve the preliminary injunction and to dismiss plaintiff's bill.

On October 4, 1949, plaintiff, Bloomsburg Mills, Inc., filed a bill of complaint in equity by which it seeks to enjoin defendants, Local Union No. 667, Congress of Industrial Organizations, Textile Workers Union of America; Frank Novakowski, president; Sophie Dudzelek, treasurer; Frank Bergenski, secretary; Joseph Belas, business agent; Charles Sobol, regional director, and Frank Novakowski, Sophie Dudzelek, Frank Bergenski, Joseph Belas and Charles Sobol, as individuals, preliminarily until hearing, and perpetually thereafter, collectively and individually, from: (a) Trespassing upon property of complainant; (b) all manner of threats, intimidation, coercion or physical violence and/or force against complainant's employes, agents or other duly authorized agents of complainant.

Although the bill of complaint is supported by injunction affidavits, testimony was taken on the same day in support of the bill. On that date, the affidavits and testimony having confirmed the facts averred in the complaint, a preliminary injunction was granted

as prayed for. Hearing on the motion to continue the same was fixed for October 10, 1949, at 10 a.m.

On October 10, 1949, an answer was filed by defendants, as well as a motion to dissolve the preliminary injunction. The motion to dissolve the preliminary injunction was denied with leave to renew the same following further hearing.

At hearings held October 10, 1949, and October 14, 1949, testimony offered on behalf of plaintiff as well as defendants was taken. Following the completion of the testimony, the court directed that the preliminary injunction be continued until final hearing unless further order be made meanwhile.

On October 14, 1949, a decree was entered allowing plaintiff to amend paragraph 2 in the bill of complaint.

Pursuant to order of October 31, 1949, wherein the preliminary injunction was continued, defendants' motion to dissolve the injunction and dismiss the bill was argued before the court en banc.

The bill discloses that plaintiff is a corporation engaged in the business of processing textile yarns into manufactured products, and that plaintiff is the owner and in possession of approximately 17 acres of land situate in the Township of Dallas and the Borough of Dallas, Pa. Upon these lands, complainant has erected a subsidiary plant known as the Fernbrook Park Mill Division, which plant has been in operation since on or about April 1, 1949.

The bill further avers that defendant, Local Union 667, CIO, Textile Workers Union of America, is an unincorporated association, the members of which are too numerous to be individually named, and individual defendants are members, officers, agents or employes of Local 667, CIO. The bill alleges that the members and officers of Local 667 are not and never have been employes of complainant at its Fernbrook Park Mill Division.

The bill charges defendants with trespassing on complainant's property and alleges that they have taken physical possession of a portion thereof, and that on and after September 21, 1949, individual defendants together with others numbering 60 to 100 persons have taken physical possession of the sidewalks of complainant's property. These sidewalks are located directly in front of the main entrance or doorway of the plant. The walk is situated approximately 300 feet in from the boundary of complainant's property.

Complainant further charges that defendants have by threats, intimidation, coercion and physical violence seized the property of complainant and have, and still continue to use threats, intimidation, coercion and physical violence against the persons of complainant's employes and other persons duly authorized to be upon the property, and that local authorities have refused aid in preventing the commission of nuisances and unlawful trespasses complained of, and that the unlawful acts set forth in the bill will be continued unless restrained by the court.

The answer filed by defendants denies threats, intimidation, coercion and physical violence, and avers that defendants, until enjoined by preliminary injunction, merely walked on the sidewalks in front of the building of complainant from the hours of 6:20 to 7:20 a.m.; from 2:20 to 3:20 p.m., and 10:20 to 11:20 p.m. The answer denies that this action deprived complainant of its property and of the right of ingress and egress to and from the Fernbrook Park Mill.

Defendants aver that at least three members of Local Union 667 have been employed at the Fernbrook Park Mill Division; that defendant union and its members have been on strike at this plant of complainant, and that pursuant to the strike, they have been peacefully picketing the premises. Defendants further aver that plaintiff has a complete and adequate remedy

at law and pray that the preliminary injunction be dissolved, and that the bill be dismissed.

Under new matter, defendants aver that complainant entered into a contract with defendant union in 1943, and excepting for three or four international representatives, defendants have been employed by complainant for over 25 years; that defendant union had already filed charges of unfair labor practices with the National Labor Relations Board before the filing of the complaint.

It is the contention of defendants that a labor dispute exists here and, therefore, under the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, this court has no jurisdiction to grant an injunction on the basis of the complaint here filed.

On the other hand, plaintiff contends no labor dispute exists, that defendants are trespassers and are otherwise acting in an unlawful manner.

We feel that a labor dispute does exist here. However, the Act of June 9, 1939, P. L. 302, 43 PS §206(d), amending the Anti-Injunction Act of June 2, 1937, supra, completely restores to the courts of common pleas the equitable powers exercised by them since the Act of June 16, 1836, P. L. 784, 17 PS §281, and prior to the Act of 1937, for causes which fall within the terms of the 1939 amending acts: Western Pennsylvania Hospital et al. v. Lichliter et al., 340 Pa. 382; Carnegie-Illinois Steel Corp. v. United Steelworkers of America et al., 353 Pa. 420.

Section 1 of the Act of 1939, supra, removed the restriction imposed by the Act of 1937, supra, on the granting of preliminary injunctions on the filing of a bill supported by injunction affidavits:

"Where in the course of a labor dispute as herein defined, an employe, or employes acting in concert, or a labor organization, or the members, officers, agents, or representatives of a labor organization or anyone

acting for such organization, seize, hold, damage, or destroy the plant, equipment, machinery, or other property of the employer with the intention of compelling the employer to accede to any demands, conditions, or terms of employment, or for collective bargaining."

Under the evidence and testimony, we are of the opinion that the instant case comes within section 1 of the Act of 1939, supra. The bill and supporting affidavits clearly make out a prima facie case for equitable relief. They are supported by the testimony.

We are aware of the equitable rule that all doubtful questions are resolved against an injunction, and it is awarded only where the rights and equity of plaintiff are clear from doubt. See 8 Standard Pa. Practice 337.

We have always recognized the right of peaceful picketing. As we have said before, it is a form of free speech.

All picketing, however, must be for a lawful purpose and conducted in a lawful manner. In this instance, we can and will restrain defendants from engaging in unlawful acts. The pickets have no right to assault, threaten, intimidate or molest employes entering or leaving the plant. They have no right to damage automobiles on the property. Their picket line has become by force of numbers a picket fence. We can and will restrain this type of picketing.

As stated previously, hearings were held October 4, 10 and 14, 1949.

A survey of the testimony confirms the averments contained in the bill.

John D. Griffith, plant manager, testified that on October 4th there were 73 pickets and on other days as many as 100 pickets occupying the walk adjoining the main door leading to the plant. The record shows that the walk is located 300 feet in and from the main gate which gate adjoins the public highway, and in order for the pickets to reach the walk, it was necessary for

them to cross and trespass upon private property for the distance of 300 feet. He stated that it was extremely difficult to pass through the line; that the pickets obstructed the entrance and abused the employes entering the building. Mr. Griffith testified that the sidewalk at the entrance was only three or four feet in width and that the main door itself was only ten feet in width. He further testified as to the use of vile and vulgar language and told of acts of violence. He stated that he saw one picket kick a female employe. This incident occurred directly in front of the entrance. He testified that the pickets walked on the lawn and threw papers and peanut shells on the property; that automobiles belonging to employes were scratched and roofing nails were found in deflated tires of the automobiles parked in the space provided for employes on the plot near the walk where pickets were stationed. Mr. Griffith also testified that a "No Trespassing" sign was posted at the gate adjoining the highway and that pickets had been requested to leave the premises by the general superintendent as well as by himself, and that they had refused to leave the property.

Harry E. McCarty, an employe, testified that one morning 60 pickets were walking in front of the door, and that one of the pickets assaulted him as he attempted to enter the plant. He stated that on October 4th there were over 70 pickets on the walk; that he could not use it; and that he had to walk around it upon the lawn in order to gain entrance to the plant. He stated he saw two female employes tripped by pickets and that he had been called "scab" and other vulgar names.

William C. Price, Jr., an employe, testified that on different dates he saw some 60 to 100 pickets in front of the entrance and that he had to push his way through or walk on the lawn in order to enter the plant. He

stated that three of the pickets told him that they would make it rough for him and others who continued to work at the mill. He further stated that the pickets used profane language in addressing him.

Doyle H. Mowery testified that he had seen as many as 100 pickets at the entrance; that they had damaged the lawn; that they had thrown cigarette butts and peanut shells about the lot, and that he had heard pickets use vile language and also threaten employes.

Harold J. Dugan, an employe, testified pickets had crowded employes, including himself, off of the walk; that pickets walked two abreast, spread apart, so that another person could not pass them on the narrow walk. This witness testified that automobiles, including his own, had been scratched; that pickets had used foul language in addressing him; and that he had heard pickets threaten bodily harm to other employes.

James Gansel, Chief of Police of Dallas Township, stated that he had asked pickets to leave the premises of plaintiff. They refused to do so.

Benjamin Gribble testified concerning damage to his automobile. He stated the sidewalk was so full of pickets that he was forced to "just get off the side walk or get bumped off".

Carolyn Kester, an employe, testified that she was kicked while attempting to enter the plant.

Earl Welch testified that he saw three female employes, including Carolyn Kester, kicked by pickets while attempting to pass through the line.

In behalf of the defense, several witnesses were called. They all admitted the picketing and trespassing on private property. They insisted they had a right to do so. Some of the defendant witnesses stated the pickets walked three or four feet apart; others stated "a couple of feet apart". One witness admitted they were two or three feet apart. All of this confirms the contention of plaintiff that it was impossible to pass

through this line without being jostled or tripped by one of the pickets.

Defendants' witnesses admitted there were acts of violence on the premises, but asserted that employes of plaintiff were guilty of the assaults and not the pickets.

All of the above testimony, including that of the defense, confirms our opinion that this picketing was nothing less than a picket fence. There can be no doubt but that defendants are trespassers and are guilty of acts of violence and disorderly conduct.

As we have said before, the plant is constructed on a plot of ground of approximately 17 acres. The plot extends along the principal highway for a distance of several hundred feet. The pickets refuse to picket on the public thoroughfare. They could use the berm of the road which extends from the paved road to the fence on Pennsylvania Highway Route 309. Instead, as trespassers, they travel 300 feet over, upon and across plaintiff's private property to reach the private walk adjoining the main door leading into the building.

They have in fact seized private property, including the private walk, a part of the plant, for the purpose of preventing ingress and egress to and from the plant.

In addition to the commission of unlawful acts, the record establishes the fact that defendants are trespassers. They are not employes at present, and as stated supra, although requested to do so, they have refused to leave the property.

Courts of equity will not entertain suits involving a mere, ordinary, or naked trespass: See Kramer v. Slattery, 260 Pa. 234, 238; Scranton Electric Co. v. Black Ridge Coal Co. et al., 7 D. & C. 33, 35; Kershes v. Verbicus et al., 36 D. & C. 499, 503. Here, however, the trespass is a continuing one.

A "series of constantly recurring unlawful intrusions upon the land of another, which, although not

exactly unceasing, can be fairly said to be continuous or permanent in nature", is held to be a continuing trespass and may be enjoined. See Kramer v. Slattery, supra.

Equitable relief will be granted in such cases which, if refused, would give rise to interminable litigation.

It is frequently stated that an injunction will be granted only to prevent irreparable injury. Actually, this is only another way of stating the rule, since, as applied in equity, irreparable injury is in fact nothing else than the antithesis of "an adequate remedy at law"; where the latter does not exist, the former does and where there is an adequate remedy at law, the injury is not irreparable.

We believe the trespassing to be such as should and would be ordinarily enjoined by a court of equity.

However, as stated earlier, defendants contend that a labor dispute exists, and we are confronted by the Anti-Injunction Act of 1937, supra. In Westinghouse Electric Corporation v. United Electrical, Radio & Machine Workers of America (CIO), Local 601, et al., 353 Pa. 446, the court stated at page 457:

"But picketing to the extent to which it is designed to seize and in effect does seize and hold the employer's plant by the methods here employed does not fall within either constitutional, statutory, common law or equitable protection."

The right to seize another's property or to deny an owner of property or his representatives or employes the right of access to that property never has been recognized in this Commonwealth.

In the Carnegie case, supra, the court stated, page 429:

"Forcibly to deny an owner of property or his agents and employes access to that property for the purpose of protecting and maintaining it and its equipment or for any other legitimate purpose is in practical and

legal effect a seizure or holding of that property. Such a lawless seizure of property no government worthy of the name will tolerate or condone. The employment of hostile force against persons and property is exclusively a governmental function, and exercisable even by the government only by due process of law. When any individual or organization under whatsoever name attempts to use force to gain his or its ends they are attempting to usurp governmental functions. This attempt unless promptly and effectively restrained by legally constituted authority leads to lawlessness, disorder and anarchy, which is the very negation of all government. The law cannot temporize with lawlessness. *The first duty of government is to govern*, that is, to maintain law and order at all hazards and regardless of expense; only by doing this does it fulfill its legitimate function, which is the protection of life, liberty and property."

To deprive one of the use of his property is to deprive him of his property.

As was stated in the Carnegie case: "When property needs protection from the acts of lawless groups, it needs it at once."

It is our duty, as enunciated in the Carnegie case, supra, to decide whether or not the facts show that what defendants have been doing constituted "a holding and seizure" of the plant or any part of it. In that case the court held that the holding or seizure of one gateway to the plant entitled plaintiff to the protection of a court of equity just as fully as would the seizure of the entire plant.

Although in this case the employes can and do enter and leave the building, they do so only after great difficulty. Defendants possess and completely have taken over the area occupied by the sidewalk fronting the plant entrance. This sidewalk is not a public

thoroughfare but is private property. It does not even adjoin a public highway.

It is true defendants have not seized a building. They have, however, seized a portion of plaintiff's property, immediately in front of the building, and as stated before, 300 feet from the highway.

If they can continue this trespass, and such it is, they can broaden the area occupied by them and extend their lines for the entire distance extending from the gate to the building. And then, what is there to stop them from occupying the entire area of 17 acres exclusive of the small portion occupied by the building itself?

We feel that all of the land owned privately by plaintiff, and not dedicated for public use, is as much a part of the plant as the building itself, and to seize a part of the land involves the same question as a seizure of the whole. It is not a question of how much is seized, but what is seized.

We realize that in the Carnegie case and in the Westinghouse case, the conditions were apparently more aggravated. But the question is the same. In the latter case Chief Justice Maxey, in a concurring opinion at page 461, stated: "If there was only *one* picket and if he succeeded in blocking ingress to the plant by a display of force, his act would be lawless and enjoinable." Just so, it isn't how much property is seized. It is what is seized. Further in the opinion, at page 462, the court stated:

"For the courts or other agencies of government to permit a citizen to be deprived of his property 'even in a single instance' strikes at the foundations of orderly society."

And again said at page 463:

"The right to seize another's property . . . has never been recognized in this Commonwealth or in this nation."

In the Westinghouse case, supra, Chief Justice Maxey again stated, at page 458:

"There never was a time in the history of American jurisprudence when the right of a court of equity to issue an injunction to protect a citizen's property from imminent irreparable injury was not recognized by the courts and sustained by public opinion."

In the present case whether a labor dispute does or does not exist, defendants are trespassers.

There is no adequate remedy at law, therefore, the damage is irreparable. Defendants are guilty of a series of constantly recurring unlawful intrusions upon the land of another which can be fairly said to be continuous in nature and, therefore, constitute a continuous trespass.

In addition to the seizure of plaintiff's property and the continuing trespasses by defendants, defendants have committed a series of unlawful acts such as must be restrained. There is on the record evidence of violence, intimidation, molestation, threats and the use of vile language. Such a course of conduct this court cannot condone.

Since the Amending Act of 1939 has restored general equity jurisdiction to the courts, we are duty-bound to restrain defendants' conduct.

Now, therefore, January 10, 1950, it is ordered and directed that the preliminary injunction heretofore granted enjoining and restraining defendants, Local No. 667, CIO, Textile Workers Union of America; Frank Novakowski, president; Sophie Dudzelek, treasurer; Frank Bergenski, secretary; Joseph Belas, business agent; Charles Sobol, regional director, and Frank Novakowski, Sophie Dudzelek, Frank Bergenski, Joseph Belas, Charles Sobol, as individuals and as officers, members, agents or employes of the aforesaid organization from: (a) Trespassing upon property of complainant; (b) all manner of threats, intimidation, co-

ercion or physical violence and/or force against complainant's employes, agents or other duly authorized agents of the complainant, be continued and the injunction shall remain in full force and effect until final determination of this action.

Defendants' petition is dismissed and the motion to dissolve the injunction and dismiss plaintiff's bill is denied.

A bond in the sum of $1,000 to be approved by the court shall be furnished by plaintiff company.